UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                      :

MANHATTAN MOTORCARS, INC.,     :

                      :

                      :

                Plaintiff,    :

                      :

    - against -           :

                      :

AUTOMOBILI LAMBORHINI, S.p.A.,  :
CHAMPION MOTOR GROUP, INC.,    :
and CHAMPION MOTORS, INC., d/b/a  :
LAMBORGHINI LONG ISLAND,     :

                      :

               Defendants.  :

                      :
-----------------------------------------------------X

**OPINION AND ORDER**

**07 Civ. 978 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Manhattan Motorcars, Inc. ("Manhattan") brings this diversity action[1] against Automobili Lamborghini, S.p.A. ("Lamborghini" or "Defendant") claiming common-law fraud, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, negligent misrepresentation, violation of the New York Franchised Motor Vehicle Dealer

---

[1] This Court has jurisdiction over this matter pursuant to section 1332(a) of title 28 of the United States Code.

Act, and account stated.[2]  The claims arise from the circumstances surrounding

Manhattan's operation of a Lamborghini dealership and its attempts to expand

dealership operations into Westhampton, New York.  Manhattan seeks over fifty

million dollars in damages, as well as five million dollars in punitive damages.

Lamborghini now moves to dismiss all claims brought against it for failure to

satisfy Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

Manhattan opposes this motion.  For the following reasons, defendant's motion to

dismiss is granted in part and denied in part.

## II.    BACKGROUND[3]

### A.    The Parties

Manhattan, a New York corporation,[4] "is a dealer and seller of

expensive, unique and top of the line automobiles including Rolls Royce, Bentley,

Porsche, and Lamborghini, with its primary showroom located at 270 Eleventh

---

[2]      Manhattan alternately characterizes its claim in account stated as a claim for "Monies Owed."  *See* Amended Complaint ("Am. Compl.") at 17.  The Court has found no authority for the existence of such a claim.

[3]      The following facts, drawn from the Amended Complaint, are assumed to be true for the purposes of this motion.

[4]      *See* Am. Compl. ¶ 1.

2

Avenue, New York . . . ."[5]  Lamborghini is an Italian-based company which

manufactures and sells the Lamborghini automobile through dealerships located

throughout the world, including New York.[6]

### B.    The 1996 Agreement

In 1996, Lamborghini sought to induce Manhattan to enter into a

dealer agreement with it for the marketing and sale of Lamborghini automobiles

from plaintiff's Manhattan showroom.[7]  In order to induce Manhattan to become a

dealer, Lamborghini, through its representatives, advised Manhattan's president

and owner, Brian Miller, that if Manhattan became a dealer, it would have "an

exclusive territory in and throughout New York State for the marketing and sale of

Lamborghini vehicles for as long as [Manhattan] acted as a dealer."[8]  According to

Manhattan, this representation was a necessary inducement due to the unique

nature of the Lamborghini automobile, which bears a price tag "well in excess of

---

[5]     *Id.* ¶ 2.

[6]     *See id.* ¶¶ 3-4.

[7]     *See id.* ¶ 11.

[8]     *Id.* ¶ 16.

$150,000"[9] as well as high insurance and maintenance costs.[10]  These factors result in a limited market for the Lamborghini automobile.[11]  In fact, competition is so "stiff" among dealers that a reduction in sales volume of even a few vehicles has the potential to "significantly impair the revenues and profitability" of a Lamborghini dealership.[12]  Moreover, Lamborghini allegedly requires its dealers to satisfy "exacting design, construction and showroom standards in order to maintain the prestige and special image of the Lamborghini."[13]  The costs of compliance with these standards, which are borne by the dealers, are "substantial."[14]  As a result of these considerations, Lamborghini allegedly must offer potential dealers an exclusive territory in order to persuade them to enter into dealer agreements, which would likely be unprofitable otherwise.[15]

---

[9]     *Id.* ¶ 12.

[10]    *See id.* ¶ 13.

[11]    *See id.*  Manhattan alleges that approximately five hundred Lamborghini automobiles are sold each year through approximately forty-seven Lamborghini dealers located throughout the United States.  *See id.*

[12]    *Id.*

[13]    *Id.* ¶ 15.

[14]    *Id.*

[15]    *See id.* ¶ 17.

4

Manhattan alleges that without the assurance of exclusivity in New York, it would not have entered into a dealer agreement with Lamborghini.[16]  In 1996, in reliance upon Lamborghini's alleged representations regarding exclusive territory in New York, Manhattan entered into a written dealer agreement with Lamborghini ("1996 Agreement").[17]  The 1996 Agreement, however, makes no mention of exclusivity or territory.[18]  Between 1996 and 2005, Manhattan served as the sole Lamborghini dealer in New York State.[19]

Since the 1996 Agreement was originally entered into by the parties, it has been renewed from time to time.[20]  The most recent incarnation of the Agreement was entered into on September 1, 2005 ("2005 Agreement").[21]  The 2005 Agreement contains an integration clause, which states: "[t]his Agreement is the entire and sole agreement and understanding between the parties [and]

---

[16]     See id. ¶ 22.

[17]     See id. ¶ 18.

[18]     See id.  Manhattan alleges that this conspicuous silence was an attempt by Lamborghini to conceal the fact that it had no intention of granting an exclusive license to Manhattan for the New York area.  See id. ¶ 21.

[19]     See id. ¶ 23.

[20]     See id. ¶ 18.

[21]     See 2005 Agreement, Ex. A. to Am. Compl., at 40.

terminates and supersedes any and all other prior agreements between the parties, whether oral or in writing."[22]

### C.    The Westhampton Facility

On January 16, 2004, Manhattan and Lamborghini entered into a written Letter of Intent, in which Lamborghini "consented" to Manhattan's construction of a new facility in Westhampton, New York for the sale and service of Lamborghini automobiles.[23]   The Letter of Intent designated the new facility as a satellite of plaintiff's Manhattan dealership,[24] and stated that "an addendum to the main contract would be drafted and signed to reflect Lamborghini's acceptance of the proposed additional location in Long Island."[25]   Lamborghini represented to Miller, both before and after the signing of the Letter of Intent, that plaintiff's Westhampton facility would "be the sole dealership selling Lamborghinis in Long Island . . . ."[26]   Manhattan relied on these representations in that it would not have signed the Letter of Intent had it known that it would not have exclusive dealer

---

[22]   *Id.* at 36.

[23]   *Id.* ¶ 24.

[24]   *See id.*

[25]   *Id.*

[26]   *Id.* ¶ 26.

6

rights on Long Island.[27]

After signing the Letter of Intent, Manhattan "expended several million dollars to renovate a temporary facility for the Westhampton dealership and then to build a new, permanent facility in Westhampton . . . ."[28] Lamborghini was aware of these expenditures since 2004.[29] In September 2005, Lamborghini "changed course" and "insisted" that the Westhampton facility be operated as a separate dealership by Manhattan, rather than as a satellite facility of the Manhattan dealership.[30] "[H]aving already expended several millions of dollars on the Westhampton facility," plaintiff had "little choice but to accede to [Lamborghini's] demand . . . ."[31]

As the Westhampton facility would be operated as a separate dealership, Manhattan was required to submit a new dealer application and obtain

---

[27]     *See id.* ¶ 39.  Manhattan alleges that these representations were made to induce Manhattan to expand its dealership to Long Island and that the representations were knowingly false when made.  *See id.* ¶ 41.

[28]     *Id.* ¶ 27.

[29]     *See id.* ¶ 31.

[30]     *Id.* ¶ 28.

[31]     *Id.* ¶ 29.

approval of the application from Lamborghini.[32]  On October 15, 2005, Manhattan

filed the requisite dealer application ("Westhampton Dealer Application").[33]

Miller was later informed by a Lamborghini official that the Westhampton facility

was "in full compliance with all standards and requirements, that his application

for the Westhampton dealership would soon be approved, and he should expect a

dealer agreement to sign."[34]  To date, Manhattan's Westhampton Dealer

Application remains pending, and Lamborghini has "refused to formally approve

said application or send a dealer agreement to [Manhattan] for execution."[35]

Despite a lack of formal approval, Manhattan "is holding itself out and acting as a

Lamborghini dealer in its Westhampton facility[,]" an activity that Lamborghini

encourages.[36]

### D.     The Appointment of Champion

In the summer of 2006, Manhattan learned that Lamborghini had

signed a Letter of Interest with another car dealership, Champion Motor Group,

---

[32]     *See id.* ¶ 28.

[33]     *See id.* ¶ 29.

[34]     *Id.* ¶ 33.

[35]     *Id.* ¶ 35.

[36]     *Id.*

Inc. ("Champion").[37]  Under the Letter of Interest, Lamborghini authorized

Champion to market and sell Lamborghinis in New York.[38]  Champion's

showroom is located in Jericho, New York, about fifty miles from Manhattan's

Westhampton facility.[39]  Lamborghini entered into the Letter of Interest fully

aware of the substantial expenditures Manhattan made in connection with the

construction of its Westhampton dealership.[40]  Manhattan alleges that, in fact,

Lamborghini intentionally concealed its relationship with Champion with the

intention of inducing Manhattan to incur these expenses so as "to induce, if not

coerce [Manhattan] to accede to the rights granted to Champion."[41]  As a result of

"unfair competition" from Champion, Manhattan "has and will lose sales from its

Manhattan and Westhampton dealerships and will suffer substantial loss of

profits."[42]  At the same time, the additional Lamborghini dealership on Long

Island has benefitted Lamborghini by increasing its revenues and promoting its

---

[37]  *See id.* ¶ 36.

[38]  *See id.*

[39]  *See id.*

[40]  *See id.* ¶ 38.

[41]  *Id.* ¶ 80.

[42]  *Id.* ¶ 42.

9

good will.[43]

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary . . . ."[44] When a complaint is attacked by a Rule 12(b)(6) motion to dismiss, the plaintiff need not provide "detailed factual allegations."[45] To survive a motion to dismiss, it is enough that the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[46]

The task of the court is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[47] When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's amended complaint, which are accepted as true, as well as "documents relied on or

---

[43]    *See id.* ¶ 66.

[44]    *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).

[45]    *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007).

[46]    *Id.*

[47]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation marks and citation omitted).

incorporated by reference in the complaint."[48]  While there are legitimate reasons

to dismiss a case under Rule 12(b)(6), "[t]he case cannot, however, be dismissed

on the ground that petitioner's allegations of harm were too conclusory to put

these matters in issue."[49] Thus, while a court must take the plaintiff's allegations

as true, "the claim may still fail as a matter of law if it appears . . . that the plaintiff

can prove no set of facts in support of its claim which would entitle [him] to relief,

or if the claim is not legally feasible."[50]

###    B.    Common-Law Fraud

To recover damages for fraud under New York law, a plaintiff must

prove: (1) a misrepresentation of material fact; (2) which the defendant knew to be

false; (3) which the defendant made with the intention of inducing reliance; (4)

upon which the plaintiff reasonably relied; and (5) which caused injury to the

plaintiff.[51]  "The claim also requires a showing of proximate causation, such that

the injury 'is the natural and probable consequence of the defrauder's

---

[48]     *International Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d
229, 235-36 (S.D.N.Y. 2007).

[49]     *Erickson,* 127 S. Ct. at 2200 (2007).

[50]     *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d
455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d
Cir. 2006)).

[51]     *See Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).

11

misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.'"[52]  A claim for fraud can also be based on concealment of information if the plaintiff, in addition to showing an intentional failure to disclose a material fact reasonably resulting in injury, can demonstrate that the defendant had a duty to disclose material information.[53]  Such a duty can arise in the course of negotiations pursuant to a business transaction in three situations – (1) "where [one] party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party, it cannot give only half of the truth"; (2) "when the parties stand in a fiduciary or confidential relationship with each other"; and (3) "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."[54]

A claim for fraud under New York law must also satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which

---

[52]    *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104-05 (2d Cir. 2001) (quoting *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir. 1986)).

[53]    *See Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 36 (1st Dep't 1996).

[54]    *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

12

requires "all averments of fraud" to be "stated with particularity."[55] This

requirement must be met even in suits in which subject matter jurisdiction is

based, as here, on diversity of citizenship and in which state law controls the

elements of the fraud claim.[56] For claims of fraudulent misrepresentation, the

Second Circuit has held that Rule 9(b) requires allegations that "(1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the

statements were fraudulent."[57] In the case of fraudulent concealment or omission,

where the plaintiff is unable to specify the time and place because no act occurred,

"the complaint must still allege: (1) what the omissions were; (2) the person

responsible for the failure to disclose; (3) the context of the omissions and the

manner in which they misled the plaintiff; and (4) what the defendant obtained

through the fraud."[58]

---

[55]    Fed. R. Civ. P. 9(b).

[56]    *See, e.g., Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664
(S.D.N.Y. 2007) (citing 5A Charles Alan Wright et al., FEDERAL PRACTICE AND
PROCEDURE § 1297 (3d ed. 2004)).

[57]    *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quotation marks
omitted).

[58]    *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85
F. Supp. 2d 282, 293 (S.D.N.Y. 2000).

## C.    Breach of Contract

To establish a claim for breach of contract under New York law, a party must prove "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."[59] In determining a party's obligations under a contract, it is not for the court to "supply a specific obligation the parties themselves did not spell out."[60] "The interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint."[61] At the motion to dismiss stage, where a plaintiff's "factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[,]" in the context of a breach of contract action.[62] If the language of the contract is ambiguous, New York law requires the court to interpret a written contract "so as to give effect to the intention of the parties as expressed in the unequivocal language they have

---

[59]     *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).

[60]     *Tonking v. Port Auth. of New York and New Jersey*, 3 N.Y.3d 486, 490 (2004).

[61]     *Taussig v. Clipper Group, L.P.*, 787 N.Y.S.2d 10, 11 (1st Dep't 2004).

[62]     *Id.*

14

employed."[63]  Where "a contract recites that all of the parties' agreements are

merged in the written document, parol evidence is not admissible to vary, or

permit escape from, the terms of the integrated contract."[64]  Finally, under the New

York Statute of Frauds, an agreement which by its terms cannot to be performed

within one year must be in writing.[65]

### D.      Breach of Implied Covenant of Good Faith and Fair Dealing

"In New York, all contracts imply a covenant of good faith and fair

dealing in the course of performance."[66]  Breach of the implied covenant is

considered a breach of the underlying contract.[67]  "This covenant embraces a

pledge that neither party shall do anything which will have the effect of destroying

or injuring the right of the other party to receive the fruits of the contract."[68]

Additionally, the covenant imposes an obligation on the parties to refrain from

---

[63]      *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992).

[64]      *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993).

[65]      *See* N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney 2007).

[66]      *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (citations omitted).

[67]      *See Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002).

[68]      *Id.* (quotation marks omitted).

15

"'intentionally and purposefully [doing] anything to prevent the other party from carrying out the agreement on his part.'"[69]  While the implied covenant of good faith and fair dealing does not "imply obligations 'inconsistent with other terms of the contractual relationship,'"[70] it does encompass "'any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'"[71]

### E.   Unjust Enrichment

A plaintiff may recover in a claim for unjust enrichment if it can show that "(1) defendant was benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."[72]  Under New York law, "[t]he theory of unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates in the *absence* of any agreement."[73]  Therefore, "[t]he existence of a

---

[69]    *Carvel Corp. v. Diversified Mgmt. Group.*, 930 F.2d 228, 230 (2d Cir. 1991) (quoting *Grad v. Roberts*, 14 N.Y.2d 70, 75 (1964)).

[70]    *511 West 232nd Owners*, 98 N.Y.2d at 153 (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)).

[71]    *Id.* (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978)).

[72]    *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted).

[73]    *Id.* at 586-87(citation omitted) (emphasis added).

16

valid and enforceable written contract governing a particular subject matter
ordinarily precludes recovery in quasi contract for events arising out of the same
subject matter."[74]  However, this rule only applies when the existence of a contract
governing the transaction in question is undisputed.[75]

### F.     Breach of Fiduciary Duty

A claim for breach of fiduciary duty involves three elements:
"breach by a fiduciary of a duty owed to plaintiff; defendant's knowing
participation in the breach; and damages."[76]  There are four elements essential to
the establishment of a fiduciary relationship: "(1) [t]he vulnerability of one party
to the other which (2) results in the empowerment of the stronger party by the
weaker which (3) empowerment has been solicited or accepted by the stronger
party and (4) prevents the weaker party from effectively protecting itself."[77]

---

[74]     *Id.* at 587 (citation omitted).

[75]     *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660,
663 (2d Cir. 1996) (claim for unjust enrichment "properly pleaded as such in the
alternative to the contractual claim" where one defendant disputes being a party to
the contract). *See also Sofi Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231,
249 (S.D.N.Y. 2006) (unjust enrichment claim survived dismissal where the
parties disagreed as to whether underlying contracts were binding on defendants).

[76]     *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir.
2004).

[77]     *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d. 224
(E.D.N.Y. 2004) (quotation marks omitted).

17

Generally, where parties deal at arms-length in a commercial transaction, "'no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.'"[78]  Nevertheless, "a distributorship agreement may, in some rare instances, create a confidential relationship out of which a duty of fiduciary care arises."[79]

A fiduciary is obliged to exercise the "highest degree of good faith, honesty, integrity, fairness and fidelity" in its dealings with those to whom the duty is owed.[80]  It is "elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect."[81]  Once a fiduciary duty is established, it is so "inflexible" that the fiduciary must avoid not only self-dealing, but also "situations in which a fiduciary's personal interest

---

[78]    *Cal Distributor, Inc. v. Cadbury Schweppes Ams. Bevs., Inc.*, No. 06 Civ. 496, 2007 WL 54534, at *9 (S.D.N.Y. Jan. 5, 2007) (quoting *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 511 (S.D.N.Y. 1994)).

[79]    *Lake Erie Distrib., Inc. v. Martlet Importing Co.*, 634 N.Y.S.2d 599, 601 (4th Dep't 1995).  *Accord A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 377 (1957) (upholding sufficiency of claim for breach of fiduciary duty owed by manufacturer to distributor).

[80]    *U.S. Ice Cream Corp. v. Bizar*, 659 N.Y.S.2d 492, 492 (2d Dep't 1997).

[81]    *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989).

18

possibly conflicts with the interest of those owed a fiduciary duty."[82]

## G.   Negligent Misrepresentation

Under New York law, a claim of negligent misrepresentation must

satisfy the following five elements: "(1) the defendant had a duty, as a result of a

special relationship, to give correct information; (2) the defendant made a false

representation that it should have known was incorrect; (3) the information

supplied in the representation was known by the defendant to be desired by the

plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and

(5) the plaintiff reasonably relied on it to his or her detriment."[83]  The alleged

misrepresentation must be factual in nature: promises of future conduct or

representations as to future events are not actionable as negligent

misrepresentations.[84]  The special relationship and duty required for a negligent

misrepresentation claim is based on consideration of the following three factors:

"whether the person making the representation held or appeared to hold unique or

special expertise; whether a special relationship of trust or confidence existed

---

[82]     *Id.*

[83]     *Hydro Investors, Inc. v Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

[84]     *See id.* at 20-21.

19

between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."[85]  A simple commercial relationship, such as that between a franchisor and franchisee, does not constitute the kind of special relationship necessary for a negligent misrepresentation claim.[86]  However, courts have found a special relationship and duty, for example, where a defendant sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information.[87]

## H.   The New York Franchised Motor Vehicle Dealer Act

The Franchised Motor Vehicle Dealer Act (the "FMVDA") regulates motor vehicle manufacturers, distributors and factory or distributor representatives, as well as dealers of motor vehicles doing business in the State of New York.[88]  Section 466 of the FMVDA makes it unlawful "for a franchisor directly or indirectly to impose unreasonable restrictions on [a] franchised motor vehicle dealer relative to . . . site-control . . . and assertion of legal or equitable

---

[85]    *Suez Equity Investors*, 250 F.3d at 103.

[86]    *See Dimon, Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999).

[87]    *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 264-65 (1996).

[88]    N.Y. Veh. & Traf. Law §§ 460-473 (2007).

20

rights with respect to its franchise or dealership."[89]  Section 469 of the FMVDA

provides a private cause of action for a franchised motor vehicle dealer who is or

may be aggrieved by a violation of the FMVDA.[90]

## I.    Account Stated

"An account stated is an agreement between parties to an account

based upon prior transactions between them with respect to the correctness of the

account items and balance due."[91]  Recovery on a claim for account stated is

permitted on the theory that "the parties have, by their conduct, evidenced an

agreement upon the balance of an indebtedness."[92]  The agreement may be

express[93] or, it

> may sometimes result from the retention of accounts current
> without objection.  But the result does not always follow.  It
> varies with the circumstances that surround the submission of
> the statements and those circumstances include, of course, the

---

[89]    *Id.* § 466(1).

[90]    *See id.* § 469.

[91]    *Jim-Mar Corp. v. Aquatic Const., Ltd.*, 600 N.Y.S.2d 790, 790 (3d Dep't 1993) (citations omitted).

[92]    *Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 153-154 (1975).

[93]    *Jim-Mar Corp.*, 600 N.Y.S.2d at 790 (citations omitted).

relation between the parties.[94]

Among the circumstances to be considered in implying an agreement is whether an objection has been made to the account within a reasonable time.[95]

## IV.   DISCUSSION

### A.   Common-Law Fraud

Lamborghini moves to dismiss the fraudulent misrepresentation, fraudulent omission, and fraudulent inducement claims for failure to plead fraud with the particularity required by Rule 9(b).[96]  Specifically, it finds the Amended Complaint deficient due to Manhattan's failure to disclose the names of the Lamborghini representatives who made the allegedly fraudulent representations regarding exclusivity, and where and when the representations were made.[97]

Manhattan's Amended Complaint asserts only that the allegedly fraudulent statements were made by unnamed "representatives" of Lamborghini,

---

[94]      *Newburger-Morris Co. v. Talcott*, 219 N.Y. 505, 512 (1916) (Cardozo, J.).

[95]      *See Interman*, 37 N.Y.2d at 154.

[96]      *See* Lamborghini's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 12.

[97]      *See id.*

"in or about 1996" in the first instance,[98] and "[b]efore and after the signing of the

Letter of Intent" in the second instance.[99]  The Amended Complaint also fails to

identify where these representations were made.  Additionally, Manhattan's

allegations of fraudulent omission fail to identify the representatives responsible

for the failure to disclose Lamborghini's intentions with regard to Champion.

Manhattan's response to these deficiencies – that the "actual experience of the

parties" obviates the failure to satisfy Rule 9(b)[100] – is without support in the law

and provides no excuse.[101]  Accordingly, Manhattan's causes of action sounding in

fraud must be dismissed.

### B.    Breach of Express Contract

Manhattan's breach of contract claims are based upon an oral

agreement, allegedly made in 1996 and re-affirmed in 2004, whereby Lamborghini

granted exclusive selling rights in New York State to Manhattan.[102]  Even if

---

[98]      Am. Compl. ¶ 16.

[99]      *Id.* ¶ 26

[100]     Manhattan's Memorandum of Law in Opposition to Defendant's
Motion to Dismiss ("Pl. Opp.") at 9.

[101]     As Lamborghini notes, this attempted justification "cannot be squared
with the text of Rule 9(b), which by its terms applies to 'all averments of fraud.'"
Def. Mem. at 3.

[102]     *See* Am. Compl. ¶¶ 16, 26.

Manhattan's allegations regarding oral promises of exclusivity are taken to be true, it is nonetheless apparent that Manhattan's breach of express contract claim must be dismissed.

The relationship between Manhattan and Lamborghini was governed by the 1996 Agreement until the parties entered into the 2005 Agreement, which terminated and superseded "any and all other prior agreements between the parties, whether oral or in writing."[103]  Manhattan alleges that Lamborghini breached the contract by conferring dealer rights on Champion in 2006.[104]  Thus it is the 2005 Agreement – entered into September 1, 2005 – that dictates the rights and obligations of Manhattan and Lamborghini at the time of the alleged breach.[105] The 2005 Agreement makes no mention of exclusivity.  Therefore, any contractual right of Manhattan to an exclusive New York territory must stem from the alleged oral promises of exclusivity.  Lamborghini argues, however, that becausee all oral promises alleged in the Amended Complaint pre-date the signing of the 2005 Agreement, enforcement of those promises is explicitly barred by the integration

---

[103]    2005 Agreement, Ex. A to Am. Compl. at 36.

[104]    *See* Am. Compl. ¶¶ 36, 51.

[105]    *See* 2005 Agreement, at 40.

clause contained in the 2005 Agreement[106] and, therefore, no action for breach of contract can lie.[107]

Manhattan responds by noting that the 2005 Agreement, although dated September 2005, became effective on January 16, 2004.[108] Therefore, it reasons, oral representations of exclusivity made after January 16, 2004 are not barred by the 2005 Agreement's integration clause.[109] Although the interplay between the integration clause and the Agreement's effective date does create an ambiguity, that ambiguity need not be resolved in the context of this claim. The only representations alleged to have been made after January 2004 are those whereby Lamborghini promised Manhattan that it "would be the sole dealership selling Lamborghinis in Long Island, and [that] if Defendant *ever* wanted to expand its dealer base in Long Island, [Manhattan] would be given the first

---

[106]    *See id.* at 36.

[107]    *See* Def. Mem. at 14.

[108]    *See id.* at 27.

[109]    *See* Pl. Opp. at 9. Manhattan's Amended Complaint alleges that oral representations of exclusivity were made "[b]efore and after signing the Letter of Intent," which was entered into on January 16, 2004. Am. Compl. ¶ 26. It follows, therefore, that some oral representations of exclusivity were made after the effective date of the 2005 Agreement.

25

option."[110] The New York Statute of Frauds has been held to bar the enforcement of oral distributorship agreements of indefinite duration that can be terminated within one year only by a breach of the agreement (as opposed to at will by either party).[111] As the oral agreement alleged here does not specify a duration, and contains no provision under which either party might rightfully terminate it within the year of its making, it comes within the ambit of the Statute of Frauds.[112] Thus, even if Manhattan's interpretation of the contract were applied, and the oral promises made after January 16, 2004 were not nullified by the integration clause, the alleged oral contract is void for failure to satisfy New York's Statute of Frauds. Accordingly, no action for breach can lie and Manhattan's claims for breach of express contract are dismissed.

---

[110]    Am. Compl. ¶ 26 (emphasis added).

[111]    *See D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 457 (1984) ("[T]he oral agreement between the parties called for performance of an indefinite duration and could only be terminated within one year by its breach during that period. As such, the agreement [falls] within the Statute of Frauds, and [is] void."); *Romaine v. Colonial Tanning Corp.*, 753 N.Y.S.2d 552, 554 (3d Dep't 2003) (dismissing breach of contract claim where oral employment contract could be terminated within one year only upon breach). *Accord Alan Skop, Inc. v. Benjamin Moore, Inc.*, 909 F.2d 59, 60 (2d Cir. 1990) (dismissing breach of contract claim where oral dealership agreement of indefinite duration could be terminated only upon breach).

[112]    *See D & N Boening,* 63 N.Y.2d at 458.

## C.    Breach of Implied Covenant of Good Faith and Fair Dealing

Manhattan asserts a claim for breach of the implied covenant of good

faith and fair dealing based on Lamborghini's: (1) grant of dealership rights to

Champion, (2) failure to inform Manhattan of its intention to grant rights to

another dealer on Long Island, and (3) failure or refusal to approve Manhattan's

Westhampton Dealer Application.[113]   Lamborghini moves to dismiss this cause of

action, characterizing it as an attempt by Manhattan to "shoehorn" into the 2005

Agreement several rights, none of which were negotiated.[114]   While Lamborghini

correctly notes that the covenant of good faith and fair dealing cannot be used to

impose an obligation that would be inconsistent with other express terms of the

contractual relationship, the contract here – namely, the 2005 Agreement – is

"silent on the issues of exclusivity and territory."[115]   Similarly, it makes no

mention of a duty to disclose the appointment of new dealers.  As the implied

covenant of good faith and fair dealing could be interpreted to incorporate these

duties without contradicting the express terms of the contract, the proper question

is whether such implied terms are appropriate under the circumstances.

---

[113]      *See id.* ¶¶ 56-58.

[114]      Def. Mem. at 18.

[115]      Am. Compl. ¶ 18.

By spelling out the basis for its claims that Lamborghini failed to exercise good faith and deal fairly when it appointed Champion as a dealer on Long Island and failed to inform Manhattan of its decision to do so, Manhattan has pled a valid cause of action for breach of the implied covenant of good faith and fair dealing.  Specifically, Manhattan has pled that the unique nature of the market for Lamborghini automobiles carries with it an understanding that the manufacturer will not "park a competitor in [an approved dealer's] backyard[,]" such that the exclusivity term could fairly be implied into the contract.[116] Manhattan has also noted that Lamborghini's grant of dealer rights to Champion has the potential to deny Manhattan the fruits of its contract, inasmuch as an additional dealer in the same territory "will inevitably cut into the original dealer's allocation."[117]  This loss of market share increases "the risk of a termination by Defendant under the dealer agreement, because each dealer must sell a specified minimum number of vehicles, and failure to meet the minimum is grounds for termination . . . ."[118]  Combined with the alleged oral promises of an exclusive dealership territory in New York, these considerations support Manhattan's

---

[116]    Pl. Opp. at 11.

[117]    Am. Compl. ¶ 14.

[118]    *Id.*

28

reasonable understanding that Lamborghini would not "cannibalize" its dealer by introducing additional competitors into the same territory.[119]  Accordingly, the motion to dismiss Manhattan's claims for breach of the implied covenant of good faith and fair dealing arising from (1) the appointment of Champion as a Lamborghini dealer and (2) Lamborghini's failure to inform Manhattan of its intention to do so is denied.

Manhattan's third claim, that Lamborghini has further breached the implied covenant of good faith and fair dealing by failing to approve its Westhampton Dealer Application, is untenable.  The language of that Application explicitly states that it "does not give rise to any obligation on the part of Lamborghini and that unless and until a Lamborghini Dealer Agreement is executed by the parties and delivered, [Manhattan] will have no rights as an authorized Lamborghini Dealer."[120]  As the Dealer Application creates neither rights in Manhattan, nor obligations in Lamborghini, it cannot properly be characterized as a contract.  The Westhampton Dealer Application, therefore, does not give rise to an implied covenant of good faith and fair dealing and no claim for breach of that covenant can lie.  Accordingly, Manhattan's claim that Lamborghini

---

[119]     Pl. Opp. at 12.

[120]     Westhampton Dealer Application, Ex. B to Def. Mem. at 13-14.

failed to act in good faith and deal fairly by refusing to approve the Westhampton

Dealer Application is dismissed with prejudice.

### D.    Unjust Enrichment

Manhattan claims that Lamborghini has been enriched at Manhattan's

expense by retaining proceeds from the sale of Lamborghini automobiles at

plaintiff's Westhampton facility and the Champion facility on Long Island, and

also through the "promotion of its vehicles, franchises and good will at both

facilities."[121]  It asserts that it would be unjust for Lamborghini to retain these

benefits as Lamborghini has denied Manhattan its "expected exclusivity on Long

Island" and withheld formal approval of Manhattan's Westhampton showroom

despite "dup[ing]" Manhattan into constructing the facility.[122]  Lamborghini moves

to dismiss this claim, noting that the law precludes actions sounding in quasi-

contract when there is a valid and enforceable contract addressing the subject

matter of the claim.[123]  As the parties have a bona fide dispute as to the existence

of an enforceable contract governing the Westhampton facility, plaintiff's unjust

enrichment claim cannot be dismissed at this stage.  Accordingly, Lamborghini's

---

[121]    Am. Compl. ¶ 62.

[122]    *Id.* ¶ 63.

[123]    *See* Def. Mem. at 20-21.

motion to dismiss Manhattan's claim for unjust enrichment is denied.

### E.   Breach of Fiduciary Duty

Manhattan claims that Lamborghini owed it a duty of fiduciary care arising out of the "fiduciary and confidential relationship" established by their various Dealer Agreements.[124]  Manhattan further alleges that Lamborghini breached this fiduciary duty by, *inter alia*, demanding that Manhattan submit a separate dealer application for the Westhampton facility, granting Champion dealer rights on Long Island, and failing to inform Manhattan of its intention to appoint Champion as a dealer on Long Island.[125]  Lamborghini responds that Manhattan has failed to plead sufficiently exceptional circumstances to establish a fiduciary relationship and that Lamborghini owes no such duty to Manhattan.[126]

Although the franchisor-franchisee relationship does not give rise to fiduciary obligations absent exceptional circumstances, Manhattan has alleged that a number of terms contained in the Dealer Agreements effectively grant Lamborghini "the authority to exercise near life and death economic power over

---

[124]    Am. Compl. ¶ 70.

[125]    *See id.* ¶ 72.

[126]    *See* Def. Mem. at 7-8.

31

[Manhattan] . . . ."[127]  Of particular significance are those terms "requiring

[Manhattan] to provide reports to [Lamborghini] concerning sales, inventories,

customer data, and all information concerning [Manhattan]'s business . . . ."[128]  In

*A.S. Rampell, Inc. v. Hyster Co.*, the New York Court of Appeals held that contract

provisions requiring the plaintiff company to make its lists of prospective

customers available to the defendant, and to provide records of business activities

and report on its inventory and financial situation, were indicative of a

confidential relationship between the parties.[129]  The court held that these

contractual terms, combined with the "dependency" inherent in the

manufacturer/distributor relationship, were sufficient to plead a relationship giving

rise to fiduciary duties.[130]  The facts alleged in the Amended Complaint, including

the presence of a manufacturer/distributor relationship and a contractual

requirement that Manhattan turn over proprietary information to Lamborghini,

parallel those found in *Rampell*.  Manhattan has therefore pled circumstances

---

[127]     Am. Compl. ¶ 70.

[128]     *Id.*

[129]     3 N.Y.2d 369, 376-77 (1957).

[130]     *Id.  Accord Zimmer-Masiello, Inc. v. Zimmer, Inc.*, 552 N.Y.S.2d 935,
935 (1st Dep't 1990) (citing *Rampell* and concluding that plaintiff properly pled
claim for breach of fiduciary duty where defendant manufacturer, *inter alia*,
required plaintiff to provide confidential and proprietary information).

sufficiently extraordinary to allow its claims for breach of fiduciary duty to proceed.

### F.    Negligent Misrepresentation

Manhattan alleges that the special relationship between itself and Lamborghini created a duty on Lamborghini's part to use reasonable care when making representations to Manhattan, and that this duty was breached when it "recklessly and negligently" informed Manhattan that it would be the sole Lamborghini dealer in New York.[131]  Manhattan claims that because it reasonably relied upon these representations to its detriment, it is entitled to compensatory damages.[132]  While Manhattan has properly pled all of the elements required to state a cause of action for negligent misrepresentation, it has pled purely economic damages as a result of its reliance, thereby inviting application of New York's "economic loss rule."[133]  New York courts have attempted to keep "contract law 'from drown[ing] in a sea of tort'"[134] by erecting various "dikes," which serve to

---

[131]    Am. Compl. ¶¶ 83-84.

[132]    *See id.* ¶¶ 85-89.

[133]    *See id.* ¶¶ 87-88.

[134]    *Carmania Corp., N.V. v. Hambrecht Terrell Int'l,* 705 F. Supp. 936, 938 (S.D.N.Y. 1989) (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 866 (1986)).

33

bar actions in tort when an action in contract is available.[135]  One such dike is the

economic loss rule.[136]  Viewing the purpose of the law of contract to be "the

[facilitation] of voluntary economic exchange," New York courts restrict plaintiffs

who have "suffered 'economic loss,' but not personal or property injury, to an

action for the benefits of their bargains."[137]  Thus, "[i]f the damages suffered are of

the type remediable in contract, a plaintiff may not recover in tort."[138]  Under New

York's economic loss rule, because Manhattan has not suffered any personal or

property damage, it is limited to an action in contract for the benefit of its bargain.

       Manhattan's response – that it bases its negligent misrepresentation

claim on "duties independent of any contract, including the fiduciary duties . . .

not to conceal material information from and act against the interests of the person

to whom it owes the duty[,]" – is inapposite.[139]  The fact that the duty breached

here is independent of any contract between the parties merely prevents this claim

---

[135]    *Id.*

[136]    *See id.*

[137]    *Id.*

[138]    *Id. Accord PPI Enters. (U.S.) v. Del Monte Foods Co.*, No. 99 Civ. 3794, 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003) (dismissing negligent misrepresentation claim where plaintiff alleged only economic loss).

[139]    Pl. Opp. at 24.

from being dismissed as duplicative of Manhattan's breach of contract claims.[140] It does not allow evasion of the economic loss rule, which presents a second, distinct barrier.[141]   Accordingly, Manhattan's claim for negligent misrepresentation is dismissed with prejudice.

### G.    Violation of the New York Franchised Motor Vehicle Dealer Act

Manhattan alleges that Lamborghini violated section 466 of the FMVDA by "imposing unreasonable and capricious restrictions relative to site control and compliance with subjective standards, at both the Manhattan and Westhampton facilities," by "holding up approval of the Westhampton Dealer Application," and "by granting certain rights to Champion to sell Lamborghinis in New York."[142]   Although Lamborghini argues that these allegations fail to place it on notice of the FMVDA claims against it,[143] Manhattan's allegations satisfy the

---

[140]    *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).

[141]    *See, e.g., Robehr Films, Inc. v. American Airlines, Inc.*, No. 85 Civ 1072, 1989 WL 111079, at *2 (S.D.N.Y.  Sept. 19, 1989) ("Under New York law, . . . [plaintiff must meet] two requirements: (1) it must establish that the defendant violated a legal duty separate from its contractual obligations, *and* (2) it must demonstrate that the damages suffered do not constitute mere 'economic loss.'" (citation omitted; emphasis added)).

[142]    Am. Compl. ¶ 78.

[143]    *See* Def. Mem. at 23.

35

liberal pleading standards of the Federal Rules of Civil Procedure.[144]  Manhattan

has stated a valid FMVDA claim with regard to the violations alleged in

connection with its Manhattan showroom.  Furthermore, Manhattan has alleged

both legal and equitable rights to an exclusive territory in New York and that

Lamborghini has taken steps designed "to induce, if not coerce [Manhattan] to

accede to the rights granted to Champion." Accordingly, Manhattan's allegations

regarding Lamborghini's assignment of dealer rights to Champion support a claim

under section 466 of the FMVDA.

        Lamborghini also argues that Manhattan cannot bring a claim for

alleged violations of the FMVDA at the Westhampton facility because the Letter

of Intent had been nullified by the 2005 Agreement's integration clause.[145]  With

the Letter of Intent no longer in force, Manhattan would have no right to operate

the Westhampton facility and no right to bring suit under the FMVDA.  Manhattan

responds that the 2005 Agreement, although executed in September 2005, is

---

[144]     *See Bell Atlantic Corp.,* 127 S. Ct. at 1977 (A "bare allegation
suffices under a system that 'restricts the pleadings to the task of general notice-
giving and invest[s] the deposition-discovery process with a vital role in the
preparation for trial.'" (quoting *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)).

[145]     *See* Def. Mem. at 24.

effective as of January 16, 2004.[146] Thus, Manhattan reasons, the integration

clause does not encompass the Letter of Intent, which was executed in March

2004.[147] As noted above, the 2005 Agreement is ambiguous on this issue.

However, when deciding a motion to dismiss, a court must draw all reasonable

inferences in plaintiff's favor. Thus, because the Letter of Intent grants Manhattan

the right to operate a Lamborghini dealership in Westhampton, Manhattan may

bring a cause of action under the FMVDA. Lamborghini's motion to dismiss

Manhattan's claims under the FMVDA is denied.

### H.   Account Stated

Manhattan asserts that it: (1) "expended monies to promote and

market the Lamborghini brand"; (2) that Lamborghini "is required by agreement of

the parties to pay for or reimburse" Manhattan for these expenditures; and, (3) that

Manhattan rendered invoices to Lamborghini for the expenditures, which were

retained "without timely objection" and partially paid.[148] Construing the Amended

Complaint liberally, the latter two allegations suffice to plead an implied

agreement between the parties as to the existence and amount of the indebtedness.

---

[146]   *See* Pl. Opp. at 22.

[147]   *See id.*

[148]   Am. Compl. ¶¶ 97-100.

37

In combination, Manhattan's allegations state a valid claim for an account stated.

Accordingly, Lamborghini's motion to dismiss the claim for account stated is

denied.

## V.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the

Amended Complaint is granted as to plaintiff's claims sounding in fraud, breach

of contract, and negligent misrepresentation.  The motion is denied as to plaintiff's

claims of unjust enrichment, breach of fiduciary duty, violations of the Franchised

Motor Vehicle Dealer Act and account stated.  The motion is granted in part and

denied in part with regard to plaintiff's claims of and breach of the implied

covenant of good faith and fair dealing.  Manhattan is granted leave to replead the

claims that were not dismissed with prejudice, within twenty days of this Opinion

and Order.  The Clerk of the Court is directed to close this motion (Document #5).

A conference is scheduled for July 30, 2007 at 4:30.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 9, 2007

38

## -Appearances-

### For Plaintiff:

David M. Kolko, Esq.
Michael Cohen, Esq.
Phillips Nizer LLP
666 Fifth Avenue
New York, New York 10103
(212) 977-9700

### For Defendants:

Daniel V. Gsovski, Esq.
Keith A. Frederick, Esq.
Herzfeld & Rubin, P.C.
40 Wall Street
New York, New York 10005-2349
(212) 471-8512

James R. Vogler, Esq.
Randall L. Oyler, Esq.
David M. Wiese, Esq.
Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 984-3100